IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 20-cr-326-WJM

UNITED STATES OF AMERICA,

       Plaintiff,

v.

SCOTT LOWE,

       Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DUE TO FOURTH AMENDMENT VIOLATIONS AND SUPPORTING MEMORANDUM, AND DENYING AS MOOT DEFENDANT'S MOTION FOR LEAVE TO FILE REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

The Government charges Defendant Scott Lowe with: (1) one count of possession with intent to distribute a mixture and substance containing a detectable amount of 3,4-Methyl-enedioxy-methamphetamine (MDMA), a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); (2) one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 52.)

This matter is before the Court on Defendant's Motion to Suppress Evidence Due to Fourth Amendment Violations, and Supporting Memorandum ("Motion"), filed on April 26, 2021.[1]  (ECF No. 34.)  The Government responded on May 12, 2021 (ECF No. 44),

---

[1] Defendant filed the Motion (ECF No. 34) in response to his original Indictment. (ECF No. 1.)  Thereafter, a Superseding Indictment was filed against Defendant on June 22, 2021.

and Defendant replied on June 23, 2021 (ECF No. 55).  The Court held an evidentiary hearing on the Motion on August 26, 2021.  (ECF No. 80.)

This matter is also before the Court on Defendant's Motion for Leave to File Reply to Government's Response to Defendant's to Suppress [*sic*]  ("Motion for Leave"). (ECF No. 47.)

For the reasons set forth herein, the Motion is denied, and the Motion for Leave is denied as moot.

## I.  FACTUAL FINDINGS

Based on the parties' filings and the documentary and testimonial evidence received at the evidentiary hearing, the Court makes the following findings of fact for purposes of resolving the Motion.[2]

Beginning on September 21, 2018, Defendant was on supervised release after being convicted of a violation of 18 U.S.C. § 922(g)(1), which required him to submit to searches of his residence and property.  (ECF No. 44 at 2; ECF No. 84 at 6, 8.)  In January 2019, November 2019, December 2019, and February 2020, Probation Officer Jordan Buescher received information from a confidential informant suggesting that Defendant was hiding narcotics and firearms in a storage unit within his apartment

---

(ECF No. 52.)  Notwithstanding the fact that Defendant has not filed a motion to renew the Motion against the Superseding Indictment, the Court will nonetheless deem the Motion as addressing the Superseding Indictment, which is now the operative charging document.  (ECF No. 52.)  Accordingly, in deciding the Motion, the Court is mindful that it is applying the law and facts in the context of the Superseding Indictment.

[2] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.  It appears that the parties have ordered a transcript for only portions of the August 26, 2021 evidentiary hearing.  The Court will cite the final version of the transcript for those portions.  (*See* ECF No. 84.)  Otherwise, the Court will cite a draft version of the transcript prepared by the undersigned's court reporter. Pagination for these portions may differ from a final version of the transcript to the extent it is prepared.

building.  (ECF No. 84 at 9–10.)  At the end of April 2019, Buescher asked Defendant whether he had a storage locker, which he denied.  (*Id.* at 10.)  Around the same time, Buescher also contacted the building management for Defendant's apartment, who informed him that Defendant did not have a storage unit.  (*Id.*)

Thereafter, on February 24, 2020, Buescher conducted a home visit at Defendant's apartment and discovered contraband items.  (*Id.* at 12–13.)  During this visit, Buescher heard Defendant's young child say, "Daddy goes in there all the time," while running down the seventh-floor hall and pointing at the door of sprinkler room where the storage units are located.  (*Id.* at 14.)  Denver Police officers called a K-9 unit to run through the seventh-floor sprinkler room, but they did not discover any narcotics at that time.  (*Id.* at 14–16.)  Defendant was thereafter arrested on state charges.  (ECF No. 44 at 2; ECF No. 84 at 16.)

In the early morning of February 27, 2020, Buescher learned from a confidential informant that: (1) Defendant had placed narcotics and firearms in a storage unit on the eighth floor of his apartment complex, specifically in the first or second storage unit on the right-hand side when entering the storage area; and (2) that "people were on their way to go clean out the contents of the storage locker."  (ECF No. 84 at 17.)  Because Buescher was on vacation at the time, he contacted District 6 Denver Police Department's narcotics department and asked it to investigate the tip that he had received.  (*Id.* at 16–17.)

That same day, Denver Police Department officers Ryan Roybal and Jose Diaz arrived at Defendant's apartment building to investigate Buescher's tip.  (*Id.* at 43.)  Diaz spoke with Virginia Addleman, the property manager, who gave Diaz and Roybal

3

access to the building, including the eighth-floor storage unit space. (*Id.* at 46–48.) Thereafter, Addleman provided Diaz a map marking the storage units that should have been vacant and gave him consent to search storage unit 6—the second unit to the right of the entrance—which had items inside and was locked notwithstanding the fact that the unit should be vacant. (*Id.* at 50–54.) Addleman also signed a written consent to search form for "8th floor Sprinkler Room Unit 6." (*Id.* at 54; ECF No. 44-2.) Police then cut the lock and searched the unit, finding guns and narcotics inside a zipped suitcase.[3] (ECF No. 84 at 55–56, 71.)

## II.  BURDEN OF PROOF

The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." However, "[t]he Amendment says nothing about suppressing evidence obtained in violation of this command. That rule—the exclusionary rule—is a prudential doctrine created by th[e Supreme] Court to compel respect for the constitutional guaranty." *Davis v. United States*, 564 U.S. 229, 236 (2011) (internal

---

[3] In its response, the Government originally stated that a K-9 alerted to the possible odor of narcotics before police officers searched the storage unit. (ECF No. 44 at 3.) However, in its Supplement to the Government's Motion to Suppress Response, the Government represents that "while preparing for the hearing, the Denver Police detectives involved in the investigation stated they could not recall if the K-9 assisted the investigation prior to law enforcement entering the storage unit and searching its contents" and that it "therefore, withdraws its claims that the K-9 assisted the investigation prior to police entering the storage unit, and that the K-9 played a role in developing reasonable suspicion to search." (ECF No. 74 at 2.) Based on the Government's representation, the Court will not analyze the impact of a K-9 sniff on the constitutionality of the search.

citations and quotation marks omitted).  Under the exclusionary rule, a defendant may move for suppression of evidence obtained in violation of the Fourth Amendment.  *Id.*

It is undisputed that the Denver Police Department officers did not have a warrant when they initially searched the storage unit.  On a motion to suppress evidence derived from a warrantless search and/or seizure, the defendant bears the burden of presenting a *prima facie* case that the Fourth Amendment has been "implicated," at which point the burden shifts to the Government to prove "that its warrantless actions were justified (*i.e.*, as a lawful investigatory stop, or under some other exception to the warrant requirement)."  *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994); *see also id*. at nn.1–2 (citing authorities).

### III. ANALYSIS

In his Motion, Defendant argues that the Court should suppress all of the evidence seized from storage unit 6, as well as all other evidence obtained as fruit of the police's search of the storage unit, because the warrantless search violated his Fourth Amendment rights.  (ECF No. 34 at 1.)

However, before determining whether the warrantless search of storage unit 6 was supported by an exception to the Constitution's warrant requirement, the Court first must determine whether Defendant has standing to challenge the search of the storage unit.

"A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated."  *United States v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995) (quoting *United States v. Rubio–Rivera*, 917 F.2d 1271, 1274–75 (10th Cir. 1990)).  Standing to lodge such a challenge depends

upon two factors: (1) whether the defendant demonstrated by his conduct a subjective expectation of privacy, and (2) whether society is prepared to recognize that expectation as reasonable.  *Smith v. Maryland*, 442 U.S. 735, 740 (1979).  The party moving to suppress evidence obtained as a result of an allegedly unconstitutional search has the duty to demonstrate a subjective expectation of privacy that society is prepared to recognize as reasonable.  *United States v. Carr*, 939 F.2d 1442, 1444 (10th Cir. 1991); *see also Rakas v. Illinois*, 439 U.S. 128, 131 n.1 (1978) ("[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure").

**A.     Whether Defendant Has Demonstrated A Subjective Expectation of Privacy in the Storage Unit**

Defendant argues that "[r]esidents have a legitimate expectation of privacy in indoor storage areas" and that "by placing property inside a suitcase, there was a manifestation of intention to shield property from the prying eyes of others."  (ECF No. 34 at 7.)  In response, the Government contends that Defendant has not established that *he* had a subjective expectation of privacy in the storage unit because he has not affirmatively indicated that he was the party using the storage unit.  (ECF No. 44 at 4.)  The Court agrees with the Government.

Critically, it is Defendant, not the Government, who bears the burden of establishing his subjective privacy interest in storage unit 6.  *Carr*, 939 F.2d at 1444.  It appears as though Defendant attempts to meet this burden through attorney argument regarding the expectation of privacy that "residents" have in indoor storage areas.  However, Defendant has neither submitted an affidavit attesting to his subjective expectation of privacy in the storage unit, nor did he testify as much during the

evidentiary hearing.  As such, the Court is without evidence from which it can conclude that Defendant exhibited an actual expectation of privacy in storage unit 6 or the items within the storage unit.  *See, e.g.*, *United States v. Ruth*, 65 F.3d 599, 605 (7th Cir. 1995) (recognizing that "without an affidavit or testimony from the defendant it is almost impossible to find a privacy interest because this interest depends, in part, on the defendant's subjective intent and his actions that manifest that intent"); *United States v. Meyer*, 157 F.3d 1067, 1080 (7th Cir. 1998) (rejecting Fourth Amendment standing arguments where defendant does not claim that the refrigerator in question was his or otherwise present any evidence showing that he had a subjective expectation of privacy in the refrigerator).

Therefore, Defendant has failed to establish that he had a reasonable expectation of privacy in storage unit 6 and its contents, and he does not have standing to challenge the search.

B.  **Whether Society is Prepared to Recognize Defendant's Expectation of Privacy as Reasonable**

Even if Defendant had established a subjective privacy interest in the contents of the storage unit, the Court finds that Defendant still lacks standing to challenge the search of the storage unit because society is not prepared to recognize his expectation of privacy as reasonable.

Defendant contends that the storage unit was a constitutionally protected area because it contains the following features: (1) it was located inside his residential apartment building; (2) it was not in a "common area" accessible to the public or to all residents of the building; and (3) it was fenced in, had doors, and was padlocked.  (ECF No. 34 at 5.)  While he concedes that the exterior of the storage unit was not his

7

property, Defendant argues that "[b]y locking Storage Unit 6, [he] attained de facto exclusive control over it, and the ability to exclude others from entrance into the unit." (*Id.* at 6; ECF No. 55 (citing *United States v. Chaves*, 169 F.3d 687, 690–91 (11th Cir. 1999) (finding defendant had a reasonable expectation of privacy in a warehouse he did not own or rent where he had the only key to the warehouse)).)  He further argues that the fact that the unit was padlocked demonstrates that he had not abandoned his property.  (ECF No. 34 at 6 (citing *United States v. Hill*, 805 F.3d 935, 938–40 (10th Cir. 2015) (finding defendant retained sufficient "possessory interest" in suitcase seized by DEA investigator from common area of Amtrak train coach)).)

In response, the Government argues that because Defendant's use of the storage unit was "without authorization" and "improper," he has failed to establish that he has a reasonable expectation of privacy in the storage unit and lacks standing to challenge the search of that storage unit.  (ECF No. 44 at 4–5.)

For support, the Government cites *United States v. Johnson*, 584 F.3d 995, 999–1004 (10th Cir. 2009), in which the Tenth Circuit concluded that a defendant lacked a reasonable expectation of privacy in a storage unit that his girlfriend rented using a stolen identity.  *Id.* at 1001–02 ("[w]hatever expectation of privacy [Mr. Johnson] might assert is not a legitimate expectation that society is prepared to honor"); *see also United States v. Arango*, 912 F.2d 441, 445 (10th Cir. 1990) (recognizing that while a defendant "need not always come forward with legal documentation establishing that he lawfully possessed the area searched, the proponent must at least state that he gained possession from the owner or someone with the authority to grant possession." (internal citations omitted)).

The Government further argues that Defendant's "act of leaving the contraband in a storage unit he had no right to use was the equivalent of leaving his property in the hands of a stranger," and that by doing so, Defendant "assumed the risk that the rightful owner of the storage unit . . . would allow authorities to access the items inside." (ECF No. 44 at 7.)

After carefully considering the parties' positions and the facts of this case, the Court concludes, on the specific facts presented here, that society is not prepared to accept Defendant's expectation of privacy in storage unit 6 and the contents held therein as reasonable. In *Carr*, the Tenth Circuit recognized that "[i]mportant considerations in the expectation of privacy equation include ownership, lawful possession or lawful control of the premises searched." 939 F.2d at 1446. Notwithstanding Defendant's attempts to keep others out of the storage unit by placing a lock on the storage unit, he chose not to rent the storage unit from his apartment building; therefore, he had neither lawful possession or control over the storage unit nor the right to exclude others. *See United States v. Ruckman,* 806 F.2d 1471, 1472–74 (10th Cir. 1986) (finding squatter lacked privacy expectation to challenge search of cave in which he resided on federal land and therefore concluding antipersonnel booby traps in the cave were not suppressible).

Moreover, by placing his belongings in storage unit 6 without permission to do so, Defendant assumed the risk that the true owner of the storage unit (*i.e.*, representatives of the apartment building) would discover his unauthorized use of the storage unit, regain access to the unit, and allow law enforcements to search the unit.[4]

---

[4] During the evidentiary hearing, Brady Martinez, a property manager for the apartment complex, testified that when the apartment building staff observes a storage unit being used

*See United States v. Austin*, 66 F.3d 1115, 1119 (10th Cir. 1995) (concluding that individual did not retain a legitimate expectation of privacy when he voluntarily left his bag in a stranger's possession and "assumed the risk that [the stranger] would allow the authorities access to the bag"); *Carr*, 939 F.2d at 1446 (concluding defendant's three-week occupancy of a hotel room that was not registered to him, or someone he was sharing it with, could not be the basis of a legitimate expectation of privacy in the room); *see also United States v. Caymen*, 404 F.3d 1196, 1201 (9th Cir. 2005) (recognizing that "one who takes property by theft or fraud cannot reasonably expect to retain possession and exclude others from it once he is caught"); *United States v. Gale*, 136 F.3d 192, 195–96 (D.C. Cir. 1998) (defendant who changed the locks on an apartment rented to another and used it for packaging drugs did not have a legitimate expectation of privacy in the apartment because he did not have legal authority to be there); *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998) (holding defendant had no legitimate expectation of privacy in vacant house where he had been staying for a week).

Based on the foregoing, the Court concludes that Defendant lacks a reasonable expectation of privacy in the contents of storage unit 6 and therefore does not have standing to challenge the warrantless search of the storage unit. Based on this conclusion, the Court need not analyze whether the search of storage unit 6 is justified

---

without permission, they generally put a note on the storage locker and give the tenant a chance to claim the belongings. (Tr. at 87–89.) He further testified that the apartment building still considers the property improperly held in an unrented storage locker to belong to the tenant. (*Id.*) However, the apartment company's policies do not bear on the ultimate legal question about whether Defendant had a *right* to the storage locker.

pursuant to an exception to the warrant requirement.  The Court therefore denies the Motion.

The Court also denies as moot the Motion for Leave, which seeks leave to file a reply to the Government's response to the Motion.  (ECF No. 47.)  The Court did grant Defendant leave to file a reply to the Motion (ECF No. 51), which Defendant did (ECF No. 55).

### IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Suppress Evidence Due to Fourth Amendment Violations, and Supporting Memorandum (ECF No. 34) is DENIED; and

2. Defendant's Motion for Leave to File Reply to Government's Response to Defendant's Motion to Suppress (ECF No. 47) is DENIED as MOOT.

Dated this 15th day of November, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge